**AFFIDAVIT OF SAMUEL A. FORMAN, M.D.**

**COMMONWEALTH OF MASSACHUSETTS )**
**) ss.**
**COUNTY OF MIDDELSEX )**

I, Samuel A. Forman, M.D., being under penalty of perjury, declare and say:

1. I am a medical doctor specializing in preventive medicine and occupational medicine. I received a B.A. degree from the University of Pennsylvania majoring in history and biology, graduating *magna cum laude* in 1973. I attended Cornell Medical School, graduating with an M.D. degree in 1977. I also received a degree in public health in 1977 as a result of a joint program with the Harvard School of Public Health. Thereafter, I became board certified in occupational medicine after attending a residency at the Harvard School of Public Health.

2. In 1977, I went on active duty in the United States Navy, and I performed my internship at the Bethesda Naval Medical Center in Bethesda, Maryland during 1977 and 1978. I remained on active duty in the Navy until 1983. Thereafter, I continued to work for the Navy as a civilian employee until 1986. My qualifications and credentials are more fully described in my curriculum vitae, a copy of which is attached as Exhibit A.

3. While on active duty in the Navy, I ran an occupational health clinic at the Naval Weapons Station at Seal Beach, California, and assisted in the medical programs at the Long Beach Naval Shipyard. Among other responsibilities, I assisted in the asbestos medical surveillance program for over 2,000 employees At any one time, I was following 200 cases of asbestos disease.

4. In 1982, I was assigned to the Naval Environmental Health Center at Norfolk, Virginia. While stationed there, I designed occupational medicine programs with regard to Navy-specific occupational diseases, performed health hazard evaluations, inspected the occupational health programs of government facilities as part of the NAVOSH program, carried out epidemiologic studies, and trained Navy doctors and nurses in occupational medicine.

5. In 1983, a Navy JAG officer for the Naval Medical Command requested that I become part of a team to locate, digest and organize government documents for production in asbestos litigation. Over the next year and a half, I investigated the Navy's historical handling and knowledge of various industrial hygiene issues, including asbestos disease.

6. In 1985, pursuant to Navy orders, a copy of which is attached as Exhibit B, I completed my review of Navy knowledge and practice in industrial hygiene, including its awareness of and response to health hazards of asbestos, as a formal assignment. My search for documents took me to the National Archives, other warehouses and storage facilities for record of the Navy's Bureau of Medicine and Surgery. I was given full security clearances for and access to these facilities. I also conducted research at private facilities such as Harvard University's Countway Library of Rare Books.

7. Following my research, I published an article entitled "U.S. Navy Shipyard Occupational Medicine Through World War II" in the *Journal of Occupational Medicine*, Vol. 30, No. 1 (Jan. 1988). A copy of that article is attached as Exhibit C.

8. On the basis of my research for and regarding the Navy, I concluded that the Navy's occupational health programs have paralleled, and at times led, the development of occupational medicine and industrial hygiene with respect to asbestos-related disease. From my review of countless Navy documents and my studies while employed by the Navy, I acquired extensive knowledge as to the state of Navy knowledge and awareness regarding the hazards of asbestos. Based upon that review, I conclude that the Navy's knowledge in these areas was quite complete when compared to available knowledge at the time, and that by 1940 the Navy was a leader in the field of occupational medicine relating to, among other things, asbestos exposure.

9. Based upon my review, I am aware that the Navy knew by 1922 that asbestos exposure was a potential health hazard, and that its knowledge and awareness continued to develop throughout the following decades. This development is evidenced by, among numerous other documents, the following:

a. Louis I. Dublin, Ph.D., et al., "Instructions to Medical Officers," U.S. Naval Med. Bull. 17:883, 885-86, 897-899 (1922) (listing "Asbestos workers" among "Hazardous Occupations"). The document, a copy of which is attached as Exhibit D, originated from the Division of Preventive Medicine of the United States Navy Medical Corps.

b. Handbook of the U.S. Navy Hospital Corps (1939) (workplace inspection checklist includes: "What precautions are exercised to prevent damage from pipe covering compounds? What asbestos hazards exist?"). A copy of this document is attached as Exhibit E.

c. Annual Report of the Surgeon General of the United States Navy (1939) (describing asbestosis as "an industrial disease of the lungs incident to inhalation of asbestos dust for prolonged periods" and noting risk "continued exposure to present occupational conditions"). A copy of this document is attached as Exhibit F.

d. Ernest W. Brown, M.D., "Industrial Hygiene and the Navy in National Defense," *War Medicine*, vol. 1, 3, 11-12 (1941) (listing asbestosis among "chief occupational health hazards in navy [ship]yards" to "workers engaged in the manufacture of asbestos insulating covers" and describing appropriate measures for control of asbestos exposure). The author of the document, a copy of which is attached as Exhibit G, was a Captain in the Navy Medical Corps.

e. U.S. Navy Department, U.S. Maritime Commission, "Minimum Requirements for Safety and Industrial Health in Contract Shipyards" (Jan. 20, 1943) (describing sources of asbestos exposure and listing appropriate precautions). The document, a copy of which is attached as Exhibit H, was approved by the Navy, and an introduction was co-signed by Secretary of the Navy Frank Knox.

f. U.S. Navy *Safety Review*, Vol. 4, No. 1 (Jan. 1947) ("[e]xposure to asbestos dust is a health hazard which cannot be overlooked in maintaining an effective industrial hygiene program"). A copy of this document is attached as Exhibit I.